UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                              Case No. 8-23-72405-las

Valerie Lorraine Powell
aka Valerie Lorraine Smith Powell,
                                                                    Chapter 7
                Debtor.
------------------------------------------------------------x
Valerie Lorraine Powell
aka Valerie Lorraine Smith Powell,
                                                                    Adv. Proc. No. 8-23-08048-las
                Plaintiff,
         v.

Bank of New York Mellon fka The
Bank of New York, as Trustee for the
Certificate Holders of CWMBS, Inc.
Chl Mortgage Pass Through-Trust
2005-4, Mortgage Pass-Through
Certificates Series 2004-05,

                Defendant.
------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER

Before the Court is the motion ("Motion") [Dkt. No. 22] of *pro se* plaintiff Valerie Lorraine Powell requesting that this Court declare null and void the judgment of foreclosure and sale entered by the New York State Supreme Court, Nassau County (the "State Court"), on February 9, 2016 in favor of defendant Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-04, Mortgage Pass-Through Certificates, Series 2005-04 ("BNY Mellon"), with respect to real property located at 3386 Bertha Drive, Baldwin, New York 11510 ("Property").[1] In the Motion, plaintiff challenges defendant's standing to commence the

---

[1] The operative complaint [Dkt No. 1] seeks similar relief alleging that BNY Mellon wrongfully foreclosed upon the Property in State Court. BNY Mellon has moved to dismiss the complaint arguing that plaintiff's core assertion is nothing more than a collateral attack on the State Court proceedings and the judgment of foreclosure

1

foreclosure action arguing that defendant did not hold the original note at the time it filed the foreclosure complaint. This, plaintiff alleges, renders the judgment of foreclosure and sale null and void.

The Court held a hearing on the Motion on March 12, 2024. After careful consideration of plaintiff's submissions and arguments and, for the reasons set forth on the record at the hearing, the Court denied the Motion.[2]

I.      **Factual and Procedural Background**[3]

     A.     **The Note and Mortgage**

On October 8, 2004, plaintiff executed and delivered a note in the principal sum of $548,000.00 to Countrywide Home Loans, Inc. ("Countrywide"). On the same day, plaintiff and her spouse, Charles Bernard Powell, executed and delivered a mortgage against the Property to secure the note obligation. Plaintiff subsequently entered into a loan modification agreement with Countrywide effective March 2007, which set forth a new principal balance of $602,065.97. On April 23, 2008, BNY Mellon commenced a foreclosure action against the Powells in the State Court contending that it is the holder of the original note and assignee of the mortgage and plaintiff defaulted on the loan by failing to make payment when due on December 1, 2007. The State Court entered a Judgment of Foreclosure and Sale on February

---

and sale. Plaintiff brought the Motion for a hearing on shortened notice because a foreclosure sale of the Property was scheduled for March 13, 2024.

[2] This Memorandum Decision and Order is consistent with and explains further the bases of the Court's ruling.

[3] Unless otherwise indicated, the relevant facts are drawn from the record in plaintiff's current bankruptcy case and in the five bankruptcy cases filed by plaintiff's spouse, Charles Bernard Powell, and from documents as to which this Court may take judicial notice. *Teamsters Nat'l Freight Indus. Negotiating Comm. et al. v. Howard's Express, Inc. (In re Howard's Express, Inc.)*, 151 F. App'x 46, 48 (2d Cir. 2005) (stating that courts are empowered to take judicial notice of public filings, including a court's docket); *Talley v. LoanCare Servicing, Div. of FNF*, 16-CV-5017 (JMA) (AKT), 2018 WL 4185705, at *1 (E.D.N.Y. Aug. 31, 2018) (noting that a federal court "may take judicial notice of public records, including state court filings"); *Nath v. JP Morgan Chase Bank, N.A.*, No. 15-CV-3937 (KMK), 2016 WL 5791193, at *1 n.1 (S.D.N.Y. Sept. 30, 2016) (taking judicial notice of the note, mortgage, and assignment of mortgage and documents filed in state court foreclosure proceedings).

1, 2016, which was docketed with the Nassau County Clerk's Office on February 9, 2016 (the "Judgment").

### B. The Bankruptcy Filings

After entry of the Judgment, Mr. Powell filed for bankruptcy relief on April 19, 2016, the first of his five bankruptcy cases. All of Mr. Powell's bankruptcy cases were dismissed, except for the fifth case in which Mr. Powell obtained a chapter 7 discharge on April 5, 2023. Each bankruptcy filing by Mr. Powell implicated the automatic stay under 11 U.S.C. § 362(a)[4] thereby staying the sale of the Property at foreclosure.

On July 6, 2023, less than three months after Mr. Powell's fifth bankruptcy case was closed, plaintiff filed for relief under chapter 13 of the Bankruptcy Code. Upon the filing, the automatic stay was implicated yet again with respect to the Property and stayed enforcement of defendant's rights under the Judgment including a sale of the Property at foreclosure. On July 28, 2023, plaintiff commenced this adversary proceeding by filing a complaint alleging the wrongful foreclosure of the Property and requesting that this Court declare the Judgment null and void.

Below is a brief history of the Powells' bankruptcy filings.

### (i) First Bankruptcy Case

Mr. Powell filed for chapter 13 relief *pro se* on April 19, 2016, Case No. 8-16-71702. Before the initial meeting of creditors could be held on May 31, 2026, Mr. Powell sought to dismiss his bankruptcy case without prejudice on May 19, 2016. The bankruptcy case was dismissed on the same day pursuant to § 1307(b).

---

[4] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., will hereinafter be referred to as "§ (section number)."

3

### (ii) Second Bankruptcy Case

Mr. Powell filed his second chapter 13 petition *pro se* on September 26, 2016, Case No. 8-16-74377. He did not file his bankruptcy schedules and other information and documents required under § 521(a)(1). Mr. Powell requested an extension of time to make the mandatory disclosures. The Court granted the request extending his time to October 28, 2016. Instead of filing the information and documents required by § 521(a)(1), he filed a motion to dismiss his case without prejudice on October 28, 2016. The Court dismissed his chapter 13 case pursuant to § 1307(b) on November 1, 2016.

### (iii) Third Bankruptcy Case

A notice of sale at foreclosure of the Property was filed with the Nassau County Clerk on November 13, 2017. Before the scheduled sale date, Mr. Powell filed his third chapter 13 petition *pro se* on December 19, 2017, Case No. 8-17-77790. On January 18, 2018, BNY Mellon filed a proof of claim in the amount of $1,035,566.56. On February 5, 2018, the chapter 13 case was automatically dismissed pursuant to § 521(i) because Mr. Powell failed to file all information and documents required by § 521(a)(1).

### (iv) Fourth Bankruptcy Case

Mr. Powell filed his fourth chapter 13 petition *pro se* on December 10, 2019, Case No. 8-19-78379. On December 19, 2019, Mr. Powell commenced an adversary proceeding against BNY Mellon seeking a determination that payments made to BNY Mellon were avoidable preferences and any claim of BNY Mellon must be disallowed. On that same day, Mr. Powell voluntarily converted his chapter 13 case to a case under chapter 7 of the Bankruptcy Code. The trustee filed a motion to dismiss the chapter 7 case on February 25, 2020 due to Mr. Powell's failure to attend the § 341 meeting of creditors scheduled for January 29, 2020 and all other adjourned meetings of creditors. On March 16, 2020, Mr. Powell filed an application

4

for an extension of time to retain counsel. The Court entered an order dated March 23, 2020 (i) granting Mr. Powell an extension of time to April 24, 2020 to retain counsel for his bankruptcy case and the adversary proceeding and (ii) adjourning both the hearing on the trustee's motion to dismiss the chapter 7 case and the initial pretrial conference in the adversary proceeding to May 12, 2020. Mr. Powell did not retain counsel and he did not file opposition to the trustee's motion to dismiss. Accordingly, the Court dismissed Mr. Powell's bankruptcy case on May 12, 2020, and the adversary proceeding was subsequently dismissed.

### (v) Fifth Bankruptcy Case

Mr. Powell filed his fifth chapter 13 petition *pro se* on October 27, 2022, Case No. 8-22-73001. BNY Mellon filed a proof of claim on November 28, 2022 in the amount of $1,255,204.59. The case was converted to a chapter 7 case on December 5, 2022. On January 5, 2023, Mr. Powell commenced an adversary proceeding against BNY Mellon by filing essentially the same complaint that was filed in his fourth bankruptcy case.

On January 25, 2023, BNY Mellon filed a motion seeking relief from the automatic stay (i) under § 362(d)(1) arguing cause exists to lift the stay, including the lack of adequate protection of its interest in the Property as no adequate protection payments have been made, and (ii) under § 362(d)(2) arguing that Mr. Powell does not have any equity in the Property and, as this is a chapter 7 case, the Property is not necessary to an effective reorganization. On February 9, 2023, Mr. Powell filed opposition to the stay relief motion. Among the documents attached to his opposition is a purported check dated January 15, 2023 in the amount of $2,400,000.00 payable to "The United States Treasury." The "check" has CUSIP numbers, which are normally found on stocks, bonds and other registered securities, and states in fine print below the signature line "Redeem in Lawful Money at the U.S. Department of the Treasury or at the Federal Reserve Bank." The memo section of the "check" references the bankruptcy case for full settlement, discharge and closure of debt claim

and instructs the U.S. Treasury "dispense to Specialized Loan Servicing LLC," the servicer for BNY Mellon. The Court held hearings on the stay relief motion on February 28, 2023, March 7, 2023, and March 22, 2023.[5] Mr. Powell did not appear at the adjourned hearing on March 22, 2023.[6] After careful consideration of the parties' submissions, for the reasons set forth on the record at the hearing, the Court granted BNY Mellon relief from the automatic stay and an Order to that effect was entered on March 22, 2023. Mr. Powell received a chapter 7 discharge on April 5, 2023. The chapter 7 trustee previously filed a report of no distribution on January 24, 2023, and the bankruptcy case was closed April 21, 2023.

### C.     Plaintiff's Bankruptcy Case and Adversary Proceeding

On July 6, 2023, less than three months after Mr. Powell's fifth bankruptcy case was closed, plaintiff, proceeding *pro se*, filed a petition for relief under chapter 13. Three weeks later, on July 28, 2023, plaintiff commenced this adversary proceeding against BNY Mellon by filing a complaint asking that the Judgment be declared null and void and alleging, *inter alia*, (i) a right to rescind the mortgage against the Property under the Truth in Lending Act ("TILA"), and a claim for damages under TILA, Regulation Z, the Equal Credit Opportunity Act, and the Fair Debt Collection Practices Act, Home Ownership and Equity Protection Act, and New York General Business Law, and (ii) that the State Court foreclosure action was barred by both the New York Statute of Limitations and New York Statute of Frauds. The Clerk's Office issued a Summons, but plaintiff only served the complaint upon BNY Mellon.

---

[5] Mr. Powell appeared late for the hearing on February 28, 2023 and the hearing was adjourned to March 7, 2023. At the adjourned hearing on March 7, 2023, Mr. Powell requested that hearing be further adjourned due to a death in the family. The Court adjourned the hearing to March 22, 2023.

[6] Mr. Powell filed a motion seeking to adjourn all hearings in his bankruptcy case and to withdraw from general deposit and redeposit as special deposit funds he purportedly has with the United States government. None of the assertions in Mr. Powell's motion had any bearing on BNY Mellon's arguments in the stay relief motion. Mr. Powell filed a letter on April 20, 2023 withdrawing his motion to adjourn all hearings and to withdraw funds, and requested the voluntary dismissal of his adversary proceeding.

6

On August 23, 2023, defendant moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure asserting that this Court lacks subject matter jurisdiction and plaintiff failed to state a claim for relief.[7] The Court entered a scheduling order dated August 23, 2023 directing that (i) plaintiff either file an amended complaint or opposition by no later than September 13, 2023 and (ii) defendant file a reply to any opposition by no later than September 30, 2023. Plaintiff did not file opposition to defendant's motion to dismiss.[8] Instead, on October 2, 2023, plaintiff filed an amended complaint without seeking authorization from the Court to amend her complaint outside of the deadline set by the Court's scheduling order and as required under Rule15(a)(2).[9] As there was no opposition to the motion to dismiss filed, defendant did not file a reply.

On October 27, 2023, plaintiff filed a motion (i) requesting that defendant's counsel show their delegation of Authority under Texas Rule of Civil Procedure 12, power of attorney from "Board of Directors of the REMIC", and judicial authority from Congress as a member of the bar association to file any documents in court, and (ii) alleging that defendant's counsel cannot prove they are an Attorney General on behalf of the United States of America. Defendant filed opposition on November 21, 2023. The Court held a hearing to consider the relief requested in the motion on November 28, 2023. The Powells and counsel for defendant appeared. By Order dated December 6, 2023, the Court denied plaintiff's motion finding (i) Texas Rule of Civil Procedure inapplicable to proceedings before the U.S. Bankruptcy Court

---

[7] Rule 12(b) is made applicable to this adversary proceeding by Bankruptcy Rule 7012.

[8] On September 11, 2023, plaintiff filed a "Judicial Notice" requesting the Court to take judicial notice of an Identity Theft Report, dated September 8, 2023, that she filed with the Federal Trade Commission. Plaintiff accuses defendant's counsel and Specialized Loan Servicing of using her social security number to commit a purported tax evasion scheme. Although plaintiff asserted in the report that she discovered this fraud in December 2020, she reported the purported identity theft a few days before her opposition to defendant's motion to dismiss the adversary proceeding was due.

[9] Rule 15 is made applicable to this adversary proceeding by Bankruptcy Rule 7015.

for the Eastern District of New York and (ii) plaintiff failed to provide any factual basis and applicable legal authority to disqualify counsel for defendant in the adversary proceeding.

### D.     **Proceedings in Plaintiff's Bankruptcy Case**

#### (i)     **Objection to Confirmation**

On July 28, 2023, BNY Mellon objected to confirmation of plaintiff's chapter 13 plan as the plan failed to provide for payment of $951,866.93 in pre-petition mortgage arrears and did not provide for post-petition mortgage payments.[10] Plaintiff countered that she has commenced an adversary proceeding against BNY Mellon seeking to enforce her right under TILA to rescind a consumer credit transaction to void the security interest in her home and to recover damages. On September 20, 2023, plaintiff requested that the chapter 13 case be converted to a case under chapter 7.

#### (ii)    **BNY Mellon's Motion for Relief from Stay and Plaintiff's Motion for Reconsideration**

On August 24, 2023, a day after filing its motion to dismiss the adversary proceeding, BNY Mellon filed a motion seeking (i) pursuant to § 362(d)(1) and (d)(2) relief from the automatic stay and (ii) pursuant to § 1301(c) relief from the co-debtor stay as to the Property. On September 20, 2023, BNY Mellon filed a Certificate of No Objection stating that no opposition to its stay relief motion was filed by the opposition deadline. On September 22, 2023, plaintiff filed a late opposition to the stay relief motion and to the Certificate of No Objection asserting identity theft violations and that complaints have been forwarded to proper authorities for investigation. The Court held a hearing on the stay relief motion on September 26, 2023. Counsel for BNY Mellon appeared in support of the stay relief motion. Plaintiff did not appear. The Court found that BNY Mellon demonstrated "cause" for granting relief from the automatic stay to permit it to continue its foreclosure action in State Court (i)

---

[10] BNY Mellon filed a proof of claim on August 31, 2023 in the amount of $1,288,399.14.

8

pursuant to § 362(d)(1) for cause, including lack of adequate protection of BNY Mellon's lien on the Property, and (ii) pursuant to the relevant factors set forth in *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990). On September 27, 2023, the Court entered an order granting BNY Mellon relief from the automatic stay ("Stay Relief Order").

On October 11, 2023, plaintiff filed an objection to the Stay Relief Order and, by motion filed on October 17, 2023, plaintiff sought to vacate the Stay Relief Order under Rule 60(b).[11] Plaintiff asserted there were defective assignments of the underlying note and mortgage and challenged BNY Mellon's standing to bring the foreclosure action and enforce the note and mortgage. BNY Mellon filed a response on October 25, 2023 contending that plaintiff raised the very same arguments in the foreclosure action and that BNY Mellon established standing by demonstrating it held the note prior to commencing the foreclosure action, as well as demonstrating the chain of assignments of the mortgage, and that the State Court entered Judgment in favor of BNY Mellon on February 9, 2016. As such, BNY Mellon argued that the principle of *res judicata* precludes plaintiff from relitigating issues that were or could have been raised in the foreclosure action. Plaintiff filed a reply on November 13, 2023 claiming there is no specific, properly secured owner of the limited beneficial interest of her note.

The Court held a hearing on plaintiff's motion to vacate the Stay Relief Order on November 28, 2023. The Powells and counsel for BNY Mellon appeared. Based upon the arguments and submissions of the parties' and the record made at the hearing, the Court entered an order on December 6, 2023 ("December 6, 2023 Order") denying plaintiff's motion to vacate the Stay Relief Order on the following grounds. First, Texas Rule of Civil Procedure

---

[11] Rule 60(b) is made applicable here by Bankruptcy Rule 9024.

12 regarding delegation of authority does not apply to proceedings before this Court. Second, plaintiff failed to meet her burden of demonstrating that the extraordinary relief of vacating the Stay Relief Order under Rule 60(b) is warranted. Third, the certificate of service attached to BNY Mellon's motion for relief from stay stated that plaintiff was served with the motion on August 24, 2023. Fourth, plaintiff filed opposition not only to the motion for relief from stay but also to BNY Mellon's Certificate of No Objection, thus evidencing that plaintiff had notice of both the stay relief motion and the Certificate of No Objection. Fifth, this Court's Stay Relief Order terminated the automatic stay to allow BNY Mellon's enforcement of its rights in, and remedies in and to, the Property but did not preclude plaintiff from asserting any defenses she may have before the State Court. Sixth, to the extent plaintiff seeks vacatur of the Stay Relief Order by collaterally attacking the Judgment on the ground that BNY Mellon lacked standing to commence the foreclosure action in State Court, that relief is barred under the *Rooker-Feldman* doctrine, see *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423 (2d Cir. 2014). Plaintiff did not appeal the December 6, 2023 Order denying her motion to vacate the Stay Relief Order.

### (iii) Motion to Void State Court Judgment

Plaintiff obtained a discharge in her chapter 7 case on December 28, 2023. On February 16, 2024, plaintiff filed the Motion in both her bankruptcy case and in the adversary proceeding asking this Court to declare the Judgment, the foreclosure action, and scheduled foreclosure sale of the Property on March 13, 2024 null and void under Rule 60(b). Plaintiff's core assertion is that BNY Mellon does not own the original note, the original note was not attached to the State Court foreclosure complaint, and BNY Mellon therefore lacked standing to bring the State Court foreclosure action. Additionally, plaintiff alleged fraud upon the

court, various constitutional violations of the 1st, 7th, 5th and 14th Amendments, and violations under the Uniform Commercial Code.[12] The Motion was not noticed by plaintiff for a hearing.

On February 28, 2024, plaintiff filed an application to have the Motion heard on shortened notice because of the pending March 13, 2024 foreclosure sale. Accordingly, the Court scheduled a hearing on the Motion for March 12, 2024 and directed plaintiff to serve a copy of the Motion by overnight mail via a nationally-recognized courier service by February 29, 2024 for next morning delivery upon the chapter 7 trustee and counsel for BNY Mellon. The Court's scheduling order also directed plaintiff file proof of service by March 1, 2024. No proof of service was filed with the Court. BNY Mellon filed opposition to the Motion on March 8, 2024 asserting that this Court lacks jurisdiction to reverse or modify the Judgment under the *Rooker-Feldman* doctrine.

The Court held a hearing on the Motion on March 12, 2024. The Powells appeared *pro se* and there was no appearance by counsel for BNY Mellon. At the hearing, plaintiff asked the Court to declare the Judgment void under Rule 60(b)(4) and, for the first time, asked that the Judgment be declared void for fraud under Rule 60(b)(3). The Court explained that the same grounds for denying plaintiff's collateral attack of the Judgment in her motion to vacate the Stay Relief Order are dispositive of the Motion where plaintiff likewise challenges the State Court foreclosure proceedings and the Judgment. The Court explained that plaintiff's request is barred by the *Rooker-Feldman* doctrine and the Court, therefore, lacks subject matter jurisdiction to review the Judgment entered by the State Court. Additionally, the Court explained that plaintiff's collateral challenge of the State Court foreclosure proceedings is barred by the doctrines of *res judicata* and collateral estoppel. In response, plaintiff stated

---

[12] Plaintiff filed the same motion along with a blank form Order to Show Cause on March 11, 2024, but the papers have the State Court foreclosure action caption and Index number. It appears that plaintiff may have also been seeking a stay of the foreclosure sale from the State Court using the same motion papers.

11

that she and Mr. Powell wanted to "settle and close" their litigation with BNY Mellon by tendering to the Court certain CUSIP certificates of security to settle the matter.[13] As the Court noted, plaintiff may negotiate resolution of the dispute directly with BNY Mellon.

## II.     Discussion

Plaintiff challenges the validity of the State Court Judgment and invites this Court to review the Judgment and declare it null and void. For the following reasons, plaintiff's challenge to the Judgment is denied as Rule 60(b) may not be used to void a state court judgment, and the collateral attack of the Judgment and the State Court foreclosure proceeding is barred by the *Rooker-Feldman* doctrine and the principles of *res judicata* and collateral estoppel.

### A.     Rule 60(b)

Rule 60(b) only permits this Court to reconsider its own prior orders and judgments and not those of another court. "[A] federal district court cannot overturn a state court judgment under Rule 60(b)." *Mina v. Muth*, 616 F. App'x 40, 41 (3d Cir. 2015); *Key v. JPMorgan Chase Bank, N.A.*, Civil Action File No. 1:17-CV-4341-MLB-CMS, 2018 U.S. Dist. LEXIS 227642, at *31 (Bankr. N.D. Ga. Mar. 23, 2018). Thus, Rule 60(b) cannot be used to set aside the Judgment.

---

[13] Plaintiff filed with the Court in the main bankruptcy case various papers signed by Mr. Powell, including an undated Certification of Birth purportedly issued by the Florida's Bureau of Vital Statistics for deposit to the United States Treasury and charge to "Charles Bernard Powell". Plaintiff also included a document, dated March 10, 2024, signed by Mr. Powell which directs $9,200,000 be made payable to "Any Federal Reserve Bank or Branch or General Depository for Credit to the Clerk Of the United States Bankruptcy Court Eastern District of New York." The "Memo" section states, "This is a Payment of an obligation to the United States And must be paid at par. Do not Wire Payment."

### B.     The Rooker-Feldman Doctrine

The *Rooker-Feldman* doctrine[14] "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Sung Cho v. City of New York*, 910 F. 3d 639, 644 (2d Cir. 2018) (citation omitted). Under the *Rooker Feldman* doctrine, a federal district court lacks the authority to review a final order or judgment of a state court where state court losers bring cases "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "The doctrine applies when a litigant seeks to reverse or modify a state court judgment or assert claims that are 'inextricably intertwined' with state court determinations." *Park v. City of N.Y.*, No. 99-Civ-2981(LBS), 2003 WL 133232, at *7 (S.D.N.Y. Jan. 16, 2003) (internal citations omitted). "[I]f adjudication of a claim in federal court would require the court to determine that a state court judgment was erroneously entered or was void, the claim is inextricably intertwined with the merits of the state court judgment." *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 166 (E.D.N.Y. 2010), *aff'd*, 446 F. App'x 360 (2d Cir. 2011) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 129 (2d Cir. 2002)). The *Rooker-Feldman* doctrine applies where all four of the following factors are met: 1) the plaintiff in the federal court action lost in state court, 2) the plaintiff complains of injuries arising from the state court judgment, 3) the plaintiff invites the federal court to review and reject the state court judgment, and 4) the judgment was rendered by the state court before the plaintiff commenced the proceedings before the federal court. *Powell v. Ocwen Loan Servicing, LLC*, 840 F. App'x 610, 611-12 (2d Cir. 2020) (citing *Hoblock v. Albany Cty Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). The first and fourth factors are

---

[14] The *Rooker-Feldman* doctrine is derived from two Supreme Court cases. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

"procedural" requirements while the second and third factors are "substantive." *Hoblock*, at 85.

Courts in the Second Circuit have held that the *Rooker-Feldman* doctrine applies to an action brought by a debtor in the bankruptcy court challenging a state court foreclosure judgment. *Barretta v. Wells Fargo Bank, N.A.*, 693 F. App'x 26, 28 (2d Cir. 2017); *Zubair v. Fay Servicing, LLC (In re Zubair)*, 20 CV 8829 (VB), 21 CV 4222 (VB), 2021 U.S. Dist. LEXIS 207717, at *15 n.8 (S.D.N.Y. Oct. 26, 2021); *In re Porzio*, 622 B.R. 134, 139 (D. Conn. 2020); *In re Sanders*, 408 B.R. 25, 34 (Bankr. E.D.N.Y. 2009). "Specifically, with respect to foreclosure proceedings, 'courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine.'" *Talley*, 2018 WL 4185705 at *4 (quoting *Ashby v. Polinsky*, No. 06-CV-6778, 2007 WL 608268, at *1 (E.D.N.Y. Feb. 22, 2007), *aff'd*, 328 F. App'x 20 (2d Cir. 2009)).

Here, the facts of this case fall squarely within the parameters of the *Rooker-Feldman* doctrine. As to the procedural requirements, the first and fourth factors are satisfied. Plaintiff lost in the State Court foreclosure action, and the Judgment was entered before plaintiff brought this adversary proceeding to void the Judgment. The substantive requirements, i.e., the second and third factors, are also satisfied. Plaintiff complains that she will lose the Property at foreclosure if the Judgment is enforced, and the sale goes forward. The alleged injury therefore stems from the Judgment. Additionally, plaintiff asks this Court to declare the Judgment null and void. In other words, plaintiff challenges the validity of the Judgment and invites this Court to review and reject the Judgment. Doing so would directly run afoul of the *Rooker-Feldman* doctrine. *Dockery v. Cullen & Dykman*, 90 F. Supp. 2d 233, 236 (E.D.N.Y 2000), *aff'd*, 2 F. App'x 78 (2d Cir. 2001) (finding that *Rooker-Feldman* doctrine

applies to claims that the state court action was unconstitutional, and the state court judgment was procured by fraud if the plaintiff seeks to overturn the judgment).

Accordingly, because plaintiff's claims challenging the Judgment all seek to set aside the Judgment, the claims are barred by the *Rooker-Feldman* doctrine. As such, this Court lacks subject matter jurisdiction to review and reject the Judgment. The appropriate forum for plaintiff to raise her claims is before the State Court. *Swiatkowski*, 745 F. Supp. 2d at 167 (holding that "to the extent that plaintiff claims she was aggrieved by the state court's ruling, the proper venue to challenge that decision was by appeal in the state court – not in federal court.").

### C. Res Judicata and Collateral Estoppel

As the Court explained at the hearing, the doctrines of *res judicata* and collateral estoppel also preclude consideration of plaintiff's arguments for voiding the Judgment by this Court. These doctrines "operate to prevent parties from contesting matters that they have had a full and fair opportunity to litigate, thereby conserving judicial resources and protecting parties from the expense and vexation of multiple lawsuits." *Marvel Characters, Inc.*, 310 F.3d 280, 286 (2d Cir. 2002) (citing *Montana v. United States*, 440 U.S. 147, 153-54 (1979)).

#### (i) Res Judicata

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). When considering application of the doctrine of res judicata, courts focus on whether "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; and (3) the claims asserted in the subsequent action were or could have been raised in the prior action." *Marshall v. Grant*, 521 F. Supp. 2d 240, 245 (E.D.N.Y. 2007). "Additionally, under

New York's transactional analysis approach to res judicata, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" *In re Hunter*, 827 N.E.2d 269, 274 (N.Y. 2005) (quoting *O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1159 (N.Y. 1981)). "'*Res Judicata* turns on the 'essential similarity of the underlying events giving rise to the various legal claims.'" *Acevedo v. HSBC Bank USA N.A.*, 15-cv-9522 (KBF), 2016 WL 6652736, at *2 (S.D.N.Y. Nov. 10, 2016) (emphasis added) (quoting *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 549 (3d Cir. 2006)). "Whether a claim that was not raised in the previous action could have been raised therein 'depends *in part* on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Marvel Characters*, 310 F.3d at 287 (emphasis in original) (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1991)).

There is no dispute that the State Court action involved an adjudication on the merits and the Judgment was entered. By entering the Judgment, the State Court determined that the Property should be sold at a foreclosure sale. *See Borrani v. Nationstar Mortg. LLC*, 820 F. App'x 20, 23 (2d Cir. 2020) (noting that the "grant of summary judgment [in state court foreclosure action] was final judgment on the merits"); *Harris v. BNC Mortg., Inc.*, 737 F. App'x 573, 575 (2d Cir. 2018) ("The foreclosure default judgment is a final judgment on the merits

There is no dispute that the State Court foreclosure action involved the same adverse parties or those in privity with them. *See generally* Motion [Dkt. No. 22].

There is no dispute that plaintiff's claims in this adversary proceeding and in the Motion challenge the underlying note and mortgage and the Judgment, including the core

assertion that BNY Mellon is not the holder of the original mortgage note and lacked standing to bring the foreclosure action. All the claims pertain to the same underlying events – BNY Mellon's attempt to enforce its rights and remedies under the note and mortgage and the Judgment with respect to the Property and plaintiff's challenge that BNY Mellon wrongfully obtained the Judgment. These are claims that plaintiff could have raised in the State Court foreclosure action. *Swiatkowski*, 745 F. Supp. 2d at 172-3 (noting that central to plaintiff's constitutional and fraud claims is the allegation that the defendants improperly obtained a Judgment of Foreclosure and Sale and that such claims are barred under the doctrine of *res judicata* because these claims could have been raised in the state court proceedings).

Because the State Court rendered a final adjudication on the merits, to wit, entry of the Judgment, plaintiff and BNY Mellon were parties to the State Court foreclosure action, and plaintiff's claims could have been raised in the State Court foreclosure action, plaintiff's claims are barred under the doctrine of *res judicata* and cannot be relitigated in this Court.

**(ii)    Collateral Estoppel**

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen*, 449 U.S. at 94. "Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters*, 310 F.3d at 288. The doctrine applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issues; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Id.,* at 289 (quoting *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998)).

Plaintiff's core assertion in the Motion challenges BNY Mellon's standing to bring the foreclosure action in the first instance. Plaintiff does not dispute that she challenged BNY Mellon's standing in the State Court foreclosure proceeding on the grounds that BNY Mellon did not hold the note before bringing the foreclosure action. "Where standing is raised as a defense by the defendant, the plaintiff is required to prove its standing before it may be determined whether the plaintiff is entitled to relief." *1077 Madison St., LLC v. Smith,* 670 F. App'x 745, 746 (2d Cir. 2016) (quoting *U.S. Bank, N.A. v. Sharif,* 933 N.Y.S.2d 293, 295 (N.Y. App. Div. 2011)). "Under New York law, '[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'" *OneWest Bank, N.A. v. Melina*, 827 F. 3d 214, 222 (2d Cir. 2016) (quoting *Wells Fargo Bank, N.A. v. Rooney*, 19 N.Y.S.3d 543, 544 (N.Y. App. Div. 2015). By entering the Judgment, the State Court determined the issue of BNY Mellon's standing and was satisfied that BNY Mellon demonstrated it held the mortgage note either through written assignment or by taking physical delivery prior to filing the foreclosure complaint.

Accordingly, plaintiff's challenge to BNY Mellon's standing to bring the foreclosure action on the ground that BNY Mellon did not prove it held the note prior to filing the State Court foreclosure complaint is barred by the doctrine of collateral estoppel and cannot be relitigated in this Court.

### III.    Conclusion

For the foregoing reasons, the Court denies plaintiff's Motion to declare the Judgment

of Foreclosure and Sale null and void.

So ordered.

Dated: May 28, 2024
Central Islip, New York



Louis A. Scarcella
United States Bankruptcy Judge